## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BRICKLIGHT, INC. d/b/a NEW YORK TOY COLLECTIVE; AND LAURA PARKER, | : | CIVIL ACTION |
|  | : |  |
| *Plaintiffs*, | : | No. 23-cv-_____ |
|  | : |  |
| v. | : |  |
|  | : |  |
| CHELSEA DOWNS, | : |  |
|  | : |  |
| *Defendant*. | : |  |

## COMPLAINT

Plaintiffs Bricklight, Inc. d/b/a New York Toy Collective ("Bricklight" or the "Company") and Laura Parker file this Complaint for damages, declaratory and injunctive relief, and other equitable remedies against Defendant Chelsea Downs, and allege as follows:

## INTRODUCTION

1.      Plaintiff Bricklight is a closely held corporation that is owned in equal fifty percent shares by Plaintiff Laura Parker and Defendant Chelsea Downs.

2.      This matter involves Ms. Downs' brazen acts of self-dealing, fraud, misappropriation of Bricklight's intellectual property, and breaches of fiduciary duties Ms. Downs owes to Bricklight as its President, sole officer, and Director.  Ms. Parker is Bricklight's only other Director and is an employee of Bricklight.

3.      Among other breaches of statutory and common law duties owed to Ms. Parker and Bricklight, Ms. Downs:

(a)      Unilaterally assigned Bricklight's registered trademark, in violation of federal and state law, for use by a new business in direct competition with Bricklight;

(b)    Abdicated her duties to Bricklight as President, including without limitation by failing to respond to customer inquiries, failing to process orders and collect payment, failing to resupply the Company's raw materials thereby disabling its manufacturing ability, mismanaging company financial issues including payroll, and intimidating and terminating employees – all while preventing Ms. Parker from performing these functions by locking her out of Company accounts – all of which impairs Bricklight's ability to do business and harms the Company and Ms. Parker;

(c)    Took multiple substantial unauthorized distributions from the Company in violation of Company bylaws;

(d)    Attempted to eject Bricklight from premises leased to it by an entity owned and controlled by Ms. Downs, based on a self-dealing lease amendment that was never disclosed, let alone approved, by Bricklight's only disinterested Director, Ms. Parker, then obtaining an *ex parte* order of possession thereby defying a supersedeas, in contempt of court;

(e)    Refused to cooperate with Ms. Parker's reasonable requests for documents and information, to which Ms. Parker is unquestionably entitled as a Bricklight Director and 50% owner, thereby concealing critical Company information to hide her other misdeeds;

(f)    Excluded Ms. Parker – a 50% owner, Director, and manager – from Bricklight's business, locking her out of the Company's accounting and customer support systems, impairing Ms. Parker's job performance, which has caused significant harm to the Company; and

(g)     Harmed Bricklight and Ms. Parker by concealing this conduct and

engaging in other acts of fraud.

4.      In all, Ms. Downs has abdicated her role as an officer and director of Bricklight –

which she has admitted to Ms. Parker – despite continuing to cause the Company to pay her

salary and make unlawful distributions to her.  These unabashed, unlawful acts have caused, and

will continue to cause, irreparable harm to the Company if they are not remedied.

5.      Ms. Down's bad faith can be explained – but not excused – by an ongoing,

acrimonious family law dispute between Ms. Parker and Ms. Downs.  Ms. Downs' ongoing

campaign to harm Bricklight, loot its assets, and establish a competing enterprise is attributable

to her personal animus to Ms. Parker relating to the matters being litigated in family law

proceedings.  Ms. Downs has admitted this to Ms. Parker.  In that proceeding, Ms. Downs has

attempted to skirt her court-ordered child support obligations for their two minor children.

6.      Downs' actions are also irrational, because she owns 50% of Bricklight and has

personally guaranteed its indebtedness.  Without authorization, she signed a personal guaranty of

a Company loan on Ms. Parker's behalf.  While Bricklight should be a successful small business,

with each transgression, Ms. Downs pushes the Company closer towards financial ruin.  She

must be removed as a Director and Officer of the Company.

7.      Ms. Downs' acts are willful, intentional, and irresponsible, done with the admitted

purpose of harming Bricklight and Ms. Parker.  Her refusal to discharge even her most basic

duties, or negotiate a resolution with Ms. Parker in good faith, has led to increased and

unnecessary costs to Ms. Parker and Bricklight, necessitating the filing of this lawsuit.

**THE PARTIES**

8.      Plaintiff Bricklight, Inc., is a private business corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Clifton Heights, PA.  It has done business since 2019 as "New York Toy Collective" and it is in the business of, among other things, manufacturing and distributing adult sexual aids.

9.      Plaintiff Laura Parker is an adult who resides in Philadelphia, PA.  She is a 50 percent owner of Bricklight, a manager of the Company, and one of two Directors on the Board of Directors.

10.     Defendant Chelsea Downs is an adult who resides in Philadelphia, PA.  She is a 50 percent owner and the President and sole officer of Bricklight.  She is the Company's only other Director on the Board of Directors.

11.     On information and belief, Ms. Downs is the sole owner and controller of nonparty Rainspace LLC, Bricklight's landlord, and nonparty New York Toy Collective LLC, a limited liability company operating under Pennsylvania law that was formed on or about September 19, 2023.

**JURISDICTION AND VENUE**

12.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and it has supplemental jurisdiction over the pendent state-law claims pursuant to 28 U.S.C. § 1367.

13.     This Court has jurisdiction over state law issues of trademark ownership antecedent to a federal trademark infringement claim.  *See Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N.V.*, 623 F.3d 61, 69-70 (2d Cir. 2010).

14.     This Court has personal jurisdiction over Defendant Chelsea Downs because she resides in this judicial district and because her conduct giving rise to this action occurred within this judicial district.

15.     Venue lies under 28 U.S.C. § 1391(b)(1)-(2) because Ms. Downs is domiciled in this district, a substantial part of the events or omissions giving rise to this action occurred in this district, and a substantial part of property that is the subject of the action is situated in this district.

## FACTUAL ALLEGATIONS

**A.     The Business and Intellectual Property of Bricklight**

16.     Ms. Downs and Ms. Parker formed Bricklight in 2019.

17.     Bricklight has two owners—Ms. Downs and Ms. Parker—each of whom holds a 50 percent interest in the Company.

18.     Ms. Downs is Bricklight's President.  She is its sole officer.

19.     Ms. Parker is a Bricklight employee and manager.

20.     Bricklight's two board seats are, and always have been, occupied by Ms. Downs and Ms. Parker.

21.     Bricklight is in the business of, *inter alia*, manufacturing and distributing sexual stimulation aids.

22.     Ms. Parker oversees the manufacture of Bricklight's products at a warehouse in Clifton Heights, PA.

23.     Unlike many foreign-made goods, Bricklight's manufactured products are higher quality than competitor products that are manufactured overseas.  For example, Bricklight's products are more durable and less likely to tear with use than imported products.

24.     Bricklight has a substantial roster of customers, many of whom are repeat customers that rely on the quality of its products.

25.     Bricklight's internal affairs are governed by bylaws ("Bylaws"), a copy of which is attached as Exhibit 1.

26.     The Bylaws impose terms for the operation of Bricklight, including specific terms governing conflicts of interest by Directors.  *See* Ex. 1, ¶¶ 75-77.

27.     The Bylaws, at Section 75(a), prohibit self-dealing transactions unless they are fully disclosed to the Board "and the Board . . . in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested Directors, even though the number of disinterested Directors is less than a quorum."

28.     Section 76 provides that "[a] contract between the Corporation and . . . a majority of the Directors or Officers will be void solely for this reason."

29.     Ms. Downs is Bricklight's *only* officer and thus she is a "majority" of the officers within the meaning of the Bylaws.

30.     Accordingly, any transaction between Ms. Downs, on the one hand, and Bricklight, on the other, is a conflict transaction that is void unless it is disclosed to, and approved by, the only disinterested director of Bricklight, Ms. Parker.

31.     Bricklight has done business under the name "New York Toy Collective" since its incorporation in 2019.

32.     In the period beginning in 2012 and lasting until the formation of Bricklight in 2019, Ms. Parker and Ms. Downs owned several businesses jointly.

33.     Those businesses operated under the New York Toy Collective fictitious name. The previous ventures produced goods in the same industry as those presently produced by Bricklight.

34.     On October 20, 2020, Bricklight – not Ms. Downs – registered U.S. trademark number 6,184,464, which "mark consists of the words 'NEW YORK TOY COLLECTIVE' above an image of an undergarment, all within a circle having a double border."

35.     The registered mark appears as follows:



36.     The mark is registered for the following use in goods: "CLASS 10: Sex toys; Adult sexual stimulation aids, namely, dildos, anal plugs, vibrators, devices for aiding in copulation and masturbation, and penis prosthetics."

37.     A copy of Bricklight's Registration Certificate issued by the U.S. Patent and Trademark Office is attached as Exhibit 2.

38.     In that transaction, Bricklight was represented by a law firm that holds itself out as having experience in intellectual property law, specifically, trademark prosecution.

39.     A copy of the PTO's current registration information for trademark number 6,184,464 is attached as Exhibit 3.

40.     Bricklight has continuously used its trademark since 2019, stamping nearly all of its products with that unique mark and name.

41.     The mark is valuable to Bricklight and designates, *inter alia*, the identity, quality, and uniqueness of its products.

42.     Bricklight engages with its customers through multiple accounts that prominently use the "New York Toy Collective" name.

43.     One of the channels through which Bricklight's customers place orders is an email address called newyorktoycollective@gmail.com.  In turn, those orders are tracked through a PayPal account associated with that email address.

44.     Customers refer to the company by its New York Toy Collective name, not "Bricklight."

45.     None of Bricklight's products bear the "Bricklight" name; rather, Bricklight is used only as the corporate entity name, which appears on billing statements and return address labels (for discretion and to protect customers' privacy).

**B.     The Deterioration of the Parties' Personal Relationship**

46.     For years, Ms. Parker and Ms. Downs had a personal romantic relationship.  They also had a family, sharing two minor children together.

47.     That personal relationship began to sour beginning in early 2021.

48.     Ms. Parker and Ms. Downs have been embroiled in an acrimonious family law dispute involving custody of their two children.  *See Downs v. Parker*, No. 0C2202928 (Pa. C.P. Phila. Cnty.) (Family Division).

49.     The family law proceedings concern, among other things, Ms. Downs' child support obligations to their children, one of whom is in Ms. Parker's full custody and the other of whom custody is shared.

50.     On August 29, 2023, the family court entered an interim order of support pending final adjudication.

51.     Ms. Downs has resisted her obligations under the interim support order, including her obligations to pay the child support.

C.     **Ms. Downs Intentionally Harms Bricklight and Ms. Parker as a Result of Her Personal Animosity and the Family Law Proceedings**

     1.     **Ms. Downs Misappropriates Bricklight's Intellectual Property**

52.     On or around August 29, 2023, Ms. Downs caused Bricklight to "assign[] the entire interest" in its registered trademark to Ms. Downs personally.

53.     A true and correct copy of a U.S. PTO document evidencing this assignment is attached as Exhibit 4.  The assignment documents have not been recorded.

54.     Ms. Down's unilateral assignment of the mark to herself is a conflict-of-interest transaction.

55.     Ms. Downs did not disclose the assignment or seek the permission of Ms. Parker, the only disinterested director of Bricklight, before unilaterally assigning the interest to herself.

56.     Ms. Parker does not consent to the assignment and would not have consented if Ms. Downs had disclosed it.

57.     An assignment, to be valid, must include the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark.  15 U.S.C. § 1060.  Therefore, the assignment would necessarily have improperly taken another of Bricklight's assets – its goodwill – with it.

58.     Ms. Downs' failure to disclose to, and obtain the consent of, the only disinterested director before assigning Bricklight's intellectual property to herself violates Ms. Down's common law fiduciary duties to Bricklight and Bricklight's bylaws, which prohibit self-dealing transactions unless they are fully disclosed to the Board "and the Board…in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested Directors, even though the number of disinterested Directors is less than a quorum."  Ex. 1, ¶ 75(a).

59.     The Bylaws further provide that "[a] contract between the Corporation and…a majority of the Directors or Officers will be void solely for this reason." Ex. 1, ¶ 76.

60.     As Bricklight's only officer, Ms. Downs is necessarily "a majority" of the Officers.

61.     As a quintessential act of improper self-dealing, Ms. Downs' assignment of Bricklight's intellectual property to herself is therefore void.

      **2.     Ms. Downs Abdicates her Responsibilities to Bricklight Yet Still Interferes with Its Operations**

62.     Although she is President of the Company, a Director, and 50% owner of Bricklight, on or around September 20, 2023, Ms. Downs advised Ms. Parker that she was looking for a new job due to her child support obligations.

63.     She told Ms. Parker via text message that "I no longer want to associate my name and credit with [B]ricklight."

64.     After receiving that communication, Ms. Parker requested that Ms. Downs confirm that she resigned from Bricklight's board and as Company President.  Ms. Downs has refused to answer that request.

65.     Without Ms. Downs contributing to the business, Ms. Parker has been forced to assume Ms. Downs' responsibilities to Bricklight.

66.     Ms. Parker asked Ms. Downs whether she could raise her own salary because she had to undertake Ms. Downs' job duties, in addition to her own.

67.     In response, Ms. Downs told Ms. Parker she could raise her salary *only if* Ms. Parker withdrew the child support petition.

68.     Ms. Downs has thus conceded that she is putting her personal interests above those of Bricklight, in violation of her fiduciary duties.

69.     She further effectively resigned from Bricklight, relinquishing her seat on the board and her position as President, yet continues to meddle in Bricklight's affairs.

70.     Ms. Downs has interfered with Bricklight's operations in other ways, hampering Bricklight's ability to communicate with customers and address customer support issues, process and receive payment for its orders, resupply its production materials, operate its product manufacturing business, and hire and manage employees.

71.     Ms. Downs has excluded Ms. Parker from Bricklight's accounts, including Authorize.net, a customer billing platform, and two email accounts by which Bricklight accepts wholesale orders and customer service requests, respectively, newyorktoycollective@gmail.com and support@toycollective.com.

72.     Bricklight's use of Authorize.net saves it substantial credit card fees from similar platforms.

73.     Ms, Downs also removed Ms. Parker's access to the Google Workstation account for Toycollective, changing the passwords on the accounts, recently locking out Ms. Parker without authority (despite Ms. Parker previously having access).

74.     Ms. Downs eventually restored Ms. Parker's access to support@toycollective.com, but, on information and belief, exercised administrative control to filter emails from certain customers, such that Ms. Parker still does not have full access to the contents of that account's email.

75.     In 2023, without explanation or notice to Ms. Parker, Ms. Downs began invoicing Bricklight customers to the newyorktoycollective@gmail.com account, which Ms. Parker does not have full access to.  It is nevertheless the Company's primary email address through which customer service requests and Bricklight's wholesale orders are now placed.

76.    Other accounts, such as info@toycollective.com; importingbuyer75@gmail.com; and sales@toycollective.com are Bricklight accounts that Ms. Downs has used for Bricklight business and excluded Ms. Parker from.

77.    Earlier in 2023, Ms. Downs stopped responding to Bricklight customer orders placed through the newyorktoycollective@gmail.com address.  Ms. Downs' failure to answer orders and her exclusion of Ms. Parker from the email accounts has led to lost business opportunities, including loss of wholesale and distribution orders due to Ms. Downs' non-responsiveness, lost potential new marketing opportunities, and lost potential business collaborations.

78.    One wholesale customer told Bricklight that "It's hard to get in touch lately"; another said, "I emailed a few weeks ago about placing our next wholesale order but haven't heard back yet"; a third customer inquired about a February 2, 2023 order and a February 22, 2023 "follow up email" – *i.e.*, three weeks later – "both with no response."

79.    A customer in Germany stated that although "[w]e really love your products," an "order from last April" was unfulfilled, causing the customer "a huge financial hit … as a small collective business."  The customer stated that "we are pretty frustrated and disappointed about the lack of communication at this point."

80.    In addition to failing to respond to numerous customer requests, Ms. Downs has also failed to invoice and collect payment in excess of $50,000 (and maybe much more) on other orders.

81.    Ms. Parker is attempting to recover those lost sums, but without access to Company information, she cannot with certainty determine what orders have been placed; which are unfulfilled; which were invoiced; whether and how those orders were paid; who was paid; and which customers have outstanding unpaid amounts due.  Ms. Downs, as President, is

responsible for maintaining the Company's financial and accounting information and exercises control over customer-related tasks.

82.    Bricklight has earned its reputation as a producer of high-quality products through the efforts of Ms. Parker, who manages its on-site production facility in Clifton Heights.  But to continue to produce Bricklight products, the facility's raw materials must be periodically replenished.

83.    Ms. Downs has the contact information for materials suppliers, and it is her responsibility as President to reorder raw materials.  She has refused to provide that contract information to Ms. Parker and has refused to reorder materials necessary to the production process.  Without adequate supply, Bricklight cannot manufacture its products.

84.    Ms. Downs has further impaired Ms. Parker's effort at keeping Bricklight operational, including by intimidating, threatening, or terminating Bricklight's few employees; mismanaging Company payroll; failing to advise Ms. Parker of the details of employee claims; refusing to cooperate with Ms. Parker to replace terminated employees; and otherwise ceasing any effort to manage Bricklight's day-to-day business.

85.    For these reasons, Bricklight's 2023 revenues have diminished, and Ms. Downs' actions cause, and will continue to cause, harm to the Company.

86.    Ms. Downs has engaged in other fraudulent, reckless, and improper conduct with respect to Ms. Parker's interests.  In 2021, Bricklight obtained a substantial loan from the Small Business Administration.  Ms. Downs, without authorization, created a DocuSign account for Ms. Parker and fraudulently executed a personal guaranty of the loan on behalf of herself and Ms. Parker.  Ms. Downs' efforts at harming the Company enhance the risks that the guaranty could be triggered.

87.     Ms. Downs has also made personal loans to the Company.  She never disclosed the loans to Ms. Parker and never sought Ms. Parker's approval of the self-dealing transactions. Ms. Downs refuses to disclose the terms of those loans, which are voidable under the Bylaws as contracts between Ms. Downs and the Company.

### 3. Ms. Downs' Unlawful and Unauthorized Distributions of Bricklight Funds

88.     On or about October 6, 2023, Ms. Parker learned that Ms. Downs had misused the Company's payroll system and took two unauthorized distributions to herself, totaling $22,000.

89.     On or about November 3, 2023, Ms. Parker learned that Ms. Downs again misused the Company's payroll system and took two additional unauthorized distributions to herself, totaling $25,513.79.

90.     Upon further investigation, Ms. Parker learned that in November 2022, Ms. Downs took yet another unlawful distribution, in the amount of $9,779.78.

91.     Together, these unlawful distributions total nearly $60,000.00.

92.     The Bylaws condition "[a]ll changes to Director compensation" on "ratification by the Shareholders."  Ex. 1, ¶ 48.

93.     The Bylaws also require that such self-interested transactions be disclosed to and approved by the disinterested Director, Ms. Parker.  *See id.* at ¶ 75(a).

94.     No such ratification, disclosure, or approval occurred here.

95.     Ms. Parker demanded that Ms. Downs return those sums.

96.     Ms. Downs refused to return those sums.

97.     In addition, on information and belief, Ms. Downs has regularly used a Bricklight credit card to pay for personal charges without authorization and without reimbursing Bricklight

for those sums, and has otherwise used Company funds for her own personal benefit, without Ms. Parker's permission.

        **4.**     **Ms. Downs' Efforts to Unlawfully Compete with Bricklight and Further Infringe Bricklight's Intellectual Property**

98.     On or about September 19, 2023, Ms. Downs registered a Pennsylvania limited liability company called "New York Toy Collective LLC," with a registered office at 4521 Chester Ave., Philadelphia PA 19143 (Ms. Downs' home address).

99.     Ms. Downs did not tell Ms. Parker she registered the new LLC.  Despite co-owning several businesses with Ms. Downs since 2012, including Bricklight, which is a going concern, Ms. Parker is not affiliated with the new entity.

100.     The PTO database discloses that on September 25, 2023, Ms. Downs applied for the word mark "NEW YORK TOY COLLECTIVE," serial no. 98196253.

101.     A copy of the PTO's registration information for this mark is attached as Exhibit 5.

102.     Just like Bricklight's registered trademark, the new word mark is designated for use in Class 10, "Sex toys; Adult sexual stimulation aids, namely, dildos, anal plugs, vibrators, devices for aiding in copulation and masturbation, and penis prosthetics; Compression garments." *See* Ex. 5.

103.     The mark was applied for by Marina F. Cunningham, of McCormick, Paulding & Huber PLLC.  *See id.*

104.     Ms. Cunningham and the McCormick, Paulding & Huber law firm previously prosecuted Bricklight's registration of its mark in 2020 (*i.e.*, the same mark Ms. Downs unilaterally assigned to herself in 2023, *supra*).

105.     Ms. Downs has repeatedly advised Ms. Parker that she prefers to manufacture Bricklight products offshore and create inexpensive "knockoff" products. Compared to the

products Bricklight manufactures domestically, these foreign-made products are inferior, *e.g.*, they tear more easily and are not subject to the same quality control as domestic production.

106.    Ms. Downs maintains Bricklight's contact lists for vendors, customers, and suppliers, and has refused to provide that information to Ms. Parker.

107.    At the same time, Ms. Downs has excluded Ms. Parker from Bricklight's accounts and ordering system.  Ms. Parker's counsel has made numerous demands for Ms. Parker's access to Bricklight accounts that Ms. Parker historically could access, but Ms. Downs locked her out.

108.    Ms. Downs has engaged in suspicious accounting practices, failing to prepare Bricklight invoices and document orders beginning no later than June 2023, failing to ensure that orders were paid for, and marking orders as "paid" without a corresponding receipt.

109.    Ms. Downs has also failed to produce credit card statements for cards used by the Company, despite Ms. Parker's multiple requests for them and indisputable entitlement to that information as a Company Director and 50% shareholder.

110.    Ms. Downs has refused to cooperate with Ms. Parker and provide information regarding those transactions.

111.    These actions, including but not limited to the unlawful assignment of Bricklight's valuable trademark; the registration of a new word mark that infringes on Bricklight's mark and is intended to operate in the same space as Bricklight; the contemporaneous establishment of a new limited liability company in the same name of the word mark and trademark; Ms. Down's lockout of Ms. Parker from Bricklight's contacts, and its ordering, accounting, and customer service systems; her change of the primary email account through which Bricklight engages customers (and exclusion of Ms. Parker from that account); her concealment of Bricklight financial information; her abdication of duties as Bricklight's President; her irrational campaign to destroy Bricklight's business; her statement to Ms. Parker

that she prefers cheaper imported goods; and her statement that she was looking for another job all lead to the strong inference that she is establishing a competing venture, usurping Bricklight's opportunities, and taking Bricklight's business with her, in breach of her legal and equitable duties owed to Bricklight and Ms. Parker.

112.    These actions were undertaken willfully and intentionally, with full knowledge that Ms. Parker objected to Downs' conduct.

### 5.    Ms. Downs Unlawfully Attempts to Eject Bricklight from Its Warehouse

113.    Bricklight operates out of a warehouse and production facility located at 20 N. Springfield Road, Clifton Heights, PA.

114.    The property is owned by Rainspace LLC, an entity wholly owned and controlled by Ms. Downs.

115.    Bricklight and Rainspace entered a lease for the premises dated as of January 1, 2021, in which Bricklight would pay $4,000 per month in rent to Rainspace, among other terms, for a 20-year period (the "Lease").

116.    Although the Lease was a conflict transaction for Ms. Downs, it was entered into with the consent of Bricklight and Ms. Parker.

117.    Beginning in 2022, without explanation, Ms. Downs began to cause Bricklight to pay the sum of approximately $6,500 per month to Rainspace, not the $4,000 per month established by the Lease.

118.    For 2023 alone, through October 31, Ms. Downs had caused Bricklight to issue *thirteen* checks for rent in the amount of $6,500 each, over $40,000 in excess of what Bricklight is obligated to pay under the lease.

119.    Ms. Downs never obtained Ms. Parker's consent for the increased rent, even though she was required to do so because it was a conflict transaction.  *See* Ex. 1 ¶¶ 75-76.

120.    Despite treating Bricklight as a piggybank by overcharging for rent, on August 21, 2023, Ms. Downs, through Rainspace, sent a purported notice of termination of the Lease to Ms. Parker (the "Purported Termination"), which threatened litigation if Bricklight did not vacate the premises by September 21, 2023.  The Purported Termination also failed to state any valid basis for termination.

121.    The ejection of Bricklight would cause irreparable harm to the Company, which would be unable to continue operations without space and would lose its customer base as a result.

122.    Subsequently, at the request of the undersigned, counsel for Ms. Downs produced a purported amendment to the Lease dated June 1, 2021 – only a few months after the original 20-year Lease and at the same time the parties' personal relationship began to deteriorate (the "Alleged Amendment").

123.    The Alleged Amendment purportedly allowed for unilateral termination of the Lease by either party with 30 days' notice, and provided for the payment for unspecified "added rent."

124.    Ms. Downs signed the amendment for both Bricklight and Rainspace.

125.    The Alleged Amendment is a classic conflict-of-interest transaction, yet Ms. Downs – consistent with her other self-dealings – failed to disclose the amendment to Ms. Parker, the only disinterested Bricklight director, and failed to obtain her consent on behalf of Bricklight.

126.    Ms. Parker never would have consented to the amendment – it drastically worsens the lease terms for Bricklight, including the unilateral termination provision, exculpation of

landlord for certain loss, the imposition of utility obligations, and a vague provision requiring payment of "added rent."

127.    A copy of the Lease, Purported Termination, and Alleged Amendment are attached hereto as Exhibit 6, Exhibit 7, and Exhibit 8, respectively.

128.    Because it was purportedly entered into without disclosure to Ms. Parker, or her consent on behalf of Bricklight, the self-dealing Alleged Amendment is unenforceable and void.

129.    On November 1, 2023, Ms. Parker learned that Rainspace had commenced ejection proceedings against Bricklight in the Pennsylvania Magisterial District Court in Secane, PA, that a hearing had been held three weeks earlier on October 11, 2023, and that the court entered judgment in the matter *Rainspace LLC v. Bricklight Inc.*, MJ-32252-LT-0000479-2023 (Pa. Magisterial District Court, Del. Cnty.).

130.    Bricklight was not validly served and was unaware of the proceedings until November 1.

131.    None of Rainspace, Ms. Downs, nor her counsel ever advised Ms. Parker or her counsel of the existence of this proceeding, even though they knew there was a dispute about it and Ms. Parker, on behalf of Bricklight, had previously challenged the purported lease termination.

132.    Shortly after it became aware of the proceedings, Bricklight appealed that ruling to the Court of Common Pleas, Delaware County, PA.

133.    The Notice of Appeal was filed on November 7 and soon after that, the Court of Common Pleas entered a supersedeas.

134.    By operation of law, the supersedeas stays enforcement of the judgment of the Magisterial District Court.  *See* Pa. R. Civ. P. MDJ R. 1008.  A copy of the supersedeas is attached as Exhibit 9.

135.   Ms. Downs' counsel accepted service on behalf of Rainspace on November 10.

136.   On November 15, Ms. Parker found an Order of Possession taped to the entrance of Bricklight's warehouse, dated November 14.

137.   The docket in the Magisterial District Court shows that on November 14, six days after Ms. Downs was advised of the appeal and four days after Ms. Downs' and Rainspace's counsel accepted service of the Notice of Appeal and supersedeas, Rainspace requested an Order of Possession before the Magisterial District Court.  The Court granted an Order of Possession that same day.  The Order of Possession is attached as Exhibit 10.

138.   Rainspace, through Ms. Downs, applied for the Order of Possession knowing that the supersedeas barred her from enforcing the judgment.

139.   Accordingly, the Order of Possession was obtained through Ms. Downs' intentionally misleading the Magisterial District Court.

140.   She obtained such order in contempt of the Commonwealth Court's Order establishing supersedeas.

141.   Bricklight effectuated service of the Notice of Appeal and supersedeas on the Magisterial District Court by certified mailing, which it apparently had not yet received as of November 14.

142.   After becoming aware of the Order of Possession, Bricklight demanded that Rainspace, Ms. Downs and her counsel seek to rescind the order, which was obtained based on false or misleading statements to the Court.  They refused to do so.

143.   Bricklight then requested that the Magisterial District Court rescind the Order.  A copy of that letter, without attachments, is attached as Exhibit 11.

6.      **Ms. Downs' Unlawful Exclusion of Ms. Parker and Refusal to Produce Bricklight Information**

144.    As a 50 percent owner, director, and manager of Bricklight, Ms. Parker is vested with certain statutory and common law rights, among them nearly unfettered access to Company documents and information as a Director.  *See* 15 Pa. C.S. §§ 1508, 1512.

145.    Nevertheless, Ms. Downs has – for months, if not more – refused to provide Ms. Parker with basic Company information and documents that she is indisputably entitled to, despite at least 15 written requests by the undersigned counsel to do so—in addition to innumerous requests by Ms. Parker to Ms. Downs.

146.    Ms. Parker needs such documents and information to perform her duties as a Director; she is also entitled as a shareholder to investigate the performance of Company management as it relates to her ownership interest.

147.    In addition, as described above, and over Ms. Parker's objections, Ms. Downs removed Ms. Parker's access to certain Bricklight accounts, among them the email accounts newyorktoycollective@gmail.com and support@toycollective.com, the Google Workstation account for Toycollective.  She also removed Ms. Parker's access to the company's PayPal account, which is used for customer payments and invoicing.

148.    Ms. Downs also removed Ms. Parker's access to numerous other accounts, to which she only restored access upon demand by Ms. Parker's counsel.

149.    Without any explanation or proper basis, Ms. Downs removed Ms. Parker's access to these accounts by changing the password and/or removing Ms. Parker's phone number and email address as account recovery options.

150.    These accounts are used for essential Bricklight business, including receiving orders for Bricklight products and tracking payments, yet Ms. Downs has locked out Ms. Parker and is either failing to monitor these accounts or failing to forward the orders to Ms. Parker.

151.    As a result, wholesale orders for Bricklight are being unfulfilled, causing harm to the Company, including loss of customers (and goodwill) due to multiple unfulfilled orders.

152.    These accounts are property of Bricklight and have been used in connection with Bricklight business, including by Ms. Parker, for years.

153.    In addition, Ms. Parker has requested from Ms. Downs invoice, order, and payment information for certain Bricklight orders since June 2023.

154.    The invoices for certain orders have not been recorded in Bricklight's accounting software and thus it is unclear whether orders shipped by Bricklight have been paid; if they were paid, where the payments were directed; and how the transactions were accounted for, if at all.

155.    Ms. Parker is entitled to all such information, including documents sufficient to show the receipt of payments for such orders and where the receipts were deposited.

156.    Ms. Parker's need for this information is acute because Ms. Downs, as alleged *supra*, has stopped doing Bricklight work.

157.    Without the information, Ms. Parker must manually contact each customer to determine whether their order was invoiced or paid, taking her away from her mounting day-to-day obligations to ensure that Bricklight remains operational, and potentially causing customer confusion and loss of reputation for Bricklight.

158.    Further, Ms. Downs has refused to produce the 2023 credit card statements for Citicard and Capitol One cards used for Company business, despite her prior agreement to produce such information upon Ms. Parker's repeated requests for it.

159.     She has also refused to produce information concerning the self-dealing loans or her communications with Bricklight's customers.

160.     Ms. Downs is required to provide all such company business, financial, and accounting information to Ms. Parker on request.  Ms. Parker is indisputably entitled to it, not least because she is a Company director but is also a manager and 50% owner.

**D.     Ms. Parker Has Demanded that Ms. Downs Cease and Desist; Ms. Downs Has Defied Those Demands**

161.     On October 4, 2023, counsel for Ms. Parker sent counsel for Ms. Downs a letter raising these violations of law and demanding that Ms. Downs remedy those violations.

162.     A copy of that letter, without its attachments, is attached as Exhibit 12.

163.     Among other relief, Ms. Parker demanded that:

a.     Ms. Downs must cease and desist from any further conflict-of-interest transactions involving Bricklight without first disclosing such contemplated transaction in writing to Ms. Parker and then obtaining her express written consent as the only disinterested Bricklight director, including without limitation any efforts to transfer ownership of Bricklight's property;

b.     Ms. Downs must take all measures to restore Bricklight's ownership of registered trademark 6,184,464.  Ms. Parker must be included on any communication in furtherance thereof;

c.     Ms. Downs must cease and desist from any use of the word mark "New York Toy Collective," including with respect to application no. 98196253. Such use infringes Bricklight's registered trademark no. 6,184,464;

d.     Ms. Downs must withdraw her application no. 98196253 for the word mark "New York Toy Collective," and refrain from any further efforts to register such mark;

e.     Ms. Downs must cease and desist any efforts to compete with Bricklight, including by operating or owning any venture involved in the following goods: "Sex toys; Adult sexual stimulation aids, namely, dildos, anal plugs, vibrators, devices for aiding in copulation and masturbation, and penis prosthetics."; in addition, she must not divert any Bricklight customers or supplier to any competing venture, or use Bricklight's intellectual property for a competitor;

f.      Ms. Downs must cease and desist from any further attempts to terminate Bricklight's lease, amend the lease without Ms. Parker's consent, enforce the void lease amendment, or initiate any legal proceeding to eject Bricklight pursuant to the lease amendment;

g.      Ms. Downs must restore Ms. Parker's access to any and all Bricklight accounts, including those for which Ms. Parker once had access, such as newyorktoycollective@gmail.com, support@toycollective.com, and the Google Workstation account for Toycollective;

h.      Ms. Downs must cease and desist from refusing to produce Bricklight's information or documents to Ms. Parker and any further efforts to remove Ms. Parker's access to any Bricklight account;

i.      Ms. Downs must comply with Bricklight's bylaws and abide by her fiduciary obligations as a director, officer, and 50% shareholder of Bricklight;

j.      Ms. Downs must provide an accounting of any alleged rent payments made by Bricklight from January 1, 2022 to present, including any "added rent" paid by Bricklight and the reasons, if any, for such "added rent"; and

k.      Ms. Downs produce the following documents and information sought by Ms. Parker, all of which Ms. Parker has a statutory right to access:

- All documents relating to the assignment of Bricklight's registered trademark, no. 6,184,464, that were provided to the U.S. PTO, and any document reflecting representations made to the U.S. PTO;

- Any communication with prospective or existing Bricklight customers since June 1, 2023;

- Documents sufficient to reflect all receipts from the sale of products manufactured by Bricklight since June 1, 2023, including but not limited to all bank statements reflecting such payments;

- All 2023 credit card statements for Citicard and Capitol One cards used for Bricklight business, which have been requested on multiple occasions by Ms. Parker;

- Login credentials for the following accounts newyorktoycollective@gmail.com and support@toycollective.com, and the Google Workstation account for Toycollective.

164.    Counsel for Ms. Downs responded to the letter.  The letter ignored many issues raised in Ms. Parker's letter, for example, it argued that Ms. Downs owned the registered Bricklight trademark, despite Bricklight's indisputable registration as owner.

165.    A copy of the letter is attached as Exhibit 13.

166.    The letter refused all of Ms. Parker's demands for relief, except that it offered to provide a mere two weeks' worth of customer communications with only certain accounts that only "related to Bricklight entities."  *Id.* at 2.  It also suggested that Ms. Parker access the Company's "final loop" software (the software is actually called Finaloop).  That software does not provide all information sought by Ms. Parker.

167.    Plainly, that response is inadequate.  And Ms. Downs continues to defy Ms. Parker's requests and continues to engage in misconduct, including taking unlawful distributions and acting in contempt of court in the landlord-tenant litigation.

168.    Ms. Downs' failure to provide any justification for her conduct or produce the information requested by Ms. Parker – that she is unquestionably entitled to as a Bricklight owner, director, and manager – is yet another indication of Ms. Downs' violations of her legal and equitable duties, and only further demonstrates her bad faith and mismanagement.

## VIOLATIONS OF LAW

### COUNT I
### *Trademark Infringement in Violation of the Lanham Act*

169.    Plaintiffs re-allege and incorporate herein the preceding allegations.

170.     Bricklight is the rightful owner of the valid and legally protectable registered

trademark number 6,184,464, consisting of the words 'NEW YORK TOY COLLECTIVE'

above an image of an undergarment, all within a circle having a double border:



171.     Bricklight has continuously used this mark in interstate commerce to market its

goods since 2019.

172.     Without authorization or legal authority to do so, Ms. Downs fraudulently caused

Bricklight to assign its right in the mark to herself, personally.

173.     On information and belief, Ms. Downs and/or her wholly owned and controlled

entity, New York Toy Collective LLC, have used Bricklight's mark in interstate commerce.

174.     Ms. Downs' or New York Toy Collective LLC's use of the "New York Toy

Collective" mark is likely to cause confusion about whether goods are those of Ms. Downs or of

Bricklight.

175.     The mark denotes the quality and distinctiveness of Bricklight's products.

176.     Bricklight's customers refer to the entity as "NYTC" and "New York Toy

Collective" and strongly associate the mark with Bricklight's products.

177.     Ms. Downs' or New York Toy Collective LLC's use of the "New York Toy

Collective" marks on inferior goods is likely to harm consumer's impression of Bricklight's

goods, dilute the value of the trademark, and cause economic harm.

178.    Confusion is even more likely because customers may have previously interacted with Ms. Downs in connection with Bricklight business and may not understand that she is now operating on behalf a competing venture.

179.    Ms. Parker and Bricklight have been or will be damaged by Defendant's conduct.

180.    Accordingly, Defendant has violated the Lanham Act, 15 U.S.C. § 1114.

**COUNT II**
***Trademark Infringement in Violation of Section 43(a) of the Lanham Act***

181.    Plaintiffs re-allege and incorporate herein the preceding allegations.

182.    Since 2019, Bricklight has owner of, and used, the word mark "New York Toy Collective" in interstate commerce to market its goods.

183.    Bricklight's mark is valid and legally protectable.

184.    It is inherently distinctive or has secondary meaning.

185.    Without advising Ms. Parker, Ms. Downs applied for the word mark "NEW YORK TOY COLLECTIVE," serial no. 98196253 for use in the same class of goods as Bricklight's trademark.

186.    On information and belief, Ms. Downs and/or her wholly owned and controlled entity, New York Toy Collective LLC, have used Bricklight's word mark in interstate commerce in efforts to unlawfully compete with Bricklight and trade off its goodwill.

187.    Ms. Downs' or New York Toy Collective LLC's use of the "New York Toy Collective" marks is likely to cause confusion about whether goods are those of Ms. Downs or of Bricklight.

188.    Customers associate the word mark with the quality and distinctiveness of Bricklight's products.

189.    Bricklight's customers routinely refer to the entity as "NYTC" and "New York Toy Collective."

190.    Ms. Downs' or New York Toy Collective LLC's use of the "New York Toy Collective" mark is likely to harm consumer's impression of Bricklight's goods, dilute the value of the trademark, and cause economic harm.

191.    Confusion is even more likely because customers may have previously interacted with Ms. Downs in connection with Bricklight business and may not understand that she is now operating on behalf of a competing venture.

192.    Ms. Parker and Bricklight have been or will be damaged by Defendant's conduct.

193.    Accordingly, Defendant violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT III**
***False Association in Violation of the Lanham Act***

194.    Plaintiffs re-allege and incorporate herein the preceding allegations.

195.    Bricklight is the rightful owner of the valid and legally protectable registered trademark number 6,184,464, consisting of the words 'NEW YORK TOY COLLECTIVE' above an image of an undergarment, all within a circle having a double border:



196.    It is also the owner and user of the word mark "New York Toy Collective" in interstate commerce to market its goods.

197.     These marks are inherently distinctive or have secondary meaning.

198.     Bricklight has continuously used these marks in interstate commerce to market its goods since 2019.

199.     On information and belief, Ms. Downs and/or her wholly owned and controlled entity, New York Toy Collective LLC, have used Bricklight's marks in interstate commerce, effectively misappropriating Bricklight's trade identity.

200.     Ms. Downs' or New York Toy Collective LLC's use of the "New York Toy Collective" marks is likely to cause confusion about whether goods are those of Ms. Downs or of Bricklight.

201.     The marks denote the quality and distinctiveness of Bricklight's products.

202.     Bricklight's customers refer to the entity as "NYTC" and "New York Toy Collective" and strongly associate the marks with Bricklight's products.

203.     Ms. Downs and/or New York Toy Collective LLC falsely associated their own inferior goods with Bricklight's "New York Toy Collective" marks, which is likely to harm consumer's impression of Bricklight's goods, dilute the value of the trademark, and cause economic harm.

204.     Confusion is even more likely because customers may have previously interacted with Ms. Downs in connection with Bricklight business and may not understand that she is now operating on behalf of a competing venture.

205.     Ms. Parker and Bricklight have been or will be damaged by Defendant's conduct.

206.     Accordingly, Defendant has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
### *Fraud on the Patent and Trademark Office*

207.     Plaintiffs re-allege and incorporate herein the preceding allegations.

208.     On or about August 29, 2023, Ms. Downs caused Bricklight to "assign[] the entire interest" in its trademark to herself personally.

209.     Ms. Downs did not have legal authority to assign Bricklight's registered trademark to herself, yet she knowingly did so anyway.

210.     Neither Bricklight, the owner of the mark, nor Ms. Parker, the sole disinterested Director, approved, or would have approved, the assignment of the mark had Ms. Downs disclosed the transaction.

211.     To effectuate the assignment and register the mark on her own behalf, Ms. Downs was obligated to establish her right to ownership to the satisfaction of the U.S. PTO.  *See* 37 C.F.R. § 3.73.  Such showing would require establishing chain of title of ownership in her favor. *See id.*

212.     Accordingly, Ms. Downs knowingly advised the PTO that she had the authority to assign ownership of the mark as assignor on behalf of Bricklight and had the right to ownership as an assignee.

213.     Ms. Downs thus falsely represented to the PTO the material fact that she owned and had authority to assign Bricklight's mark.

214.     Ms. Downs knew that the representation was false and made it with an intent to deceive the PTO, Bricklight, and Ms. Parker.

215.     The fact that Ms. Downs caused an assignment to be made demonstrates that she knew she did not own the mark.

216.    Ms. Downs was represented by intellectual property counsel in the transaction involving the assignment.

217.    Ms. Parker has requested that Ms. Downs produce the alleged assignment and other communications with the PTO.

218.    Ms. Downs refused to do so.

219.    Ms. Downs is further charged with knowledge of Bricklight's Bylaws, to which she is bound.  The Bylaws prohibit conflict of interest transactions unless they are disclosed to the disinterested Director of Bricklight – here, Ms. Parker – and approved.

220.    Ms. Downs concealed the assignment from Ms. Parker and therefore did not disclose it, let alone obtain Bricklight's approval.

221.    Bricklight would not have approved the assignment, which was made without permission and without consideration.

222.    Bricklight and Ms. Parker have been damaged by Ms. Downs' fraudulent assignment, in amounts to be determined at trial.

223.    On information and belief, as alleged herein, Ms. Downs is diverting business from Bricklight to a competing business that operates in the same commercial space and uses the same marks owned by Bricklight.

224.    Ms. Downs' misrepresentation caused reasonable reliance.

225.    Ms. Parker and Bricklight have been and will be damaged by Defendant's conduct.

226.    Ms. Downs thus violated 15 U.S.C. § 1120, which provides a civil remedy for any person injured by "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means."

## COUNT V
### *Unfair Competition in Violation of Pennsylvania Law*

227.     Plaintiffs re-allege and incorporate herein the preceding allegations.

228.     Ms. Downs has engaged in commercial conduct, in Pennsylvania and elsewhere, causing harm to Plaintiffs' commercial relationships, including by infringing its registered and unregistered trademarks, fraudulently assigning its registered trademark, falsely associating with Bricklight's marks, and engaging in a competing business founded on her misappropriation of Bricklight's intellectual property and theft of its trade identity.

229.     In operating a competing business, Ms. Downs is intentionally passing off, or plans to intentionally pass off, that business' products as those of Bricklight, trading on Bricklight's goodwill.

230.     Such conduct would dilute or tarnish Bricklight's marks, including because Ms. Downs intends to produce inferior products.

231.     Defendant's willful and wrongful infringement is ongoing and has proximately caused and will continue to cause Plaintiffs substantial injury.

232.     The conduct of Defendant as alleged herein is outrageous and resulted from improper motives and/or reckless indifference.

233.     The amount of damages sustained by Plaintiffs will be determined at trial.

## COUNT VI
### *Breach of Fiduciary Duty under Pennsylvania Law*

234.     Plaintiffs re-allege and incorporate herein the preceding allegations.

235.     Ms. Downs is a 50% shareholder of Bricklight, Bricklight's President and sole corporate officer, and a Director of the Company.

236.     Accordingly, Ms. Downs owes fiduciary duties, including the utmost fiduciary duty of loyalty, to Ms. Parker and Bricklight.

237.     Where a fiduciary stands to benefit from her decisions as a controlling stockholder, director or officer, the law requires that the fiduciary demonstrate that the transaction is entirely fair to the company.

238.     Among other available remedies, such self-dealing transactions are voidable.

239.     Further, if fiduciaries of a corporation are presented with a business opportunity within the scope of the corporations' own activities, that company's directors and officers cannot seize the opportunity for themselves.  If they do so, the corporation may claim all of the benefits of the transaction.

240.     Here, Bricklight's Bylaws expressly prohibit conflict of interest transactions between the Company and individual directors or officers.

241.     Under the Bylaws, transactions between individual directors and the Company are valid only if they are disclosed to disinterested directors and approved by the Company.

242.     Under the Bylaws, contracts between the Company and a majority of its officers – here, Ms. Downs is the only officer – are *per se* void.

243.     As described herein, Ms. Downs has abused her control and systematically engaged in self-dealing and a misappropriation of assets to enrich herself to the detriment of the Company and Ms. Parker, including the following conduct:

(a)     Misappropriating Bricklight's intellectually property, including causing the Company to assign its registered trademark to Ms. Downs personally, without disclosure to the company or its approval, and without consideration;

(b)     Abdicating her responsibilities to the Company as its President and a Director while continuing to interfere with and impair the Company's operations, including causing the Company to engage in self-dealing and other improper conduct regarding the loans;

(c)     Causing the Company to pay her unlawful distributions, in the amount of approximately $60,000, without disclosing it to the Company or obtaining the approval of its disinterested director or shareholders;

(d)     Launching a business venture in direct competition with Bricklight without disclosing it to the Company or obtaining the approval of its only disinterested director, Ms. Parker;

(e)     Registering a word mark that infringes on Bricklight's mark;

(f)     Taking unlawful excess rent in the amount of at least $40,000 then purportedly terminating the Company's lease based on a self-dealing Alleged Amendment that was never presented to Ms. Parker or approved by the Company, to which Bricklight objected;

(g)     Initiating legal proceedings to deprive Bricklight of its possession of the leased premises, without disclosing such proceedings to Bricklight or Ms. Parker, even though the matter was already disputed, then engaging in contempt of court to obtain an Order of Possession as a result of misleading the Magisterial District Court;

(h)     Denying Ms. Parker's many requests for Company information even though she is unquestionably entitled to it as a Company Director and shareholder;

(i)     Locking Ms. Parker out of Company accounts used to track Company business and financial information and otherwise concealing Company information;

(j)     Using Company credit for personal expenses; and

(k)     Defrauding the Company by concealing the foregoing conduct.

244.    These transactions were all self-dealing.  Ms. Downs did not disclose any of them to Ms. Parker or the Company, and thus necessarily did not obtain approval.  Neither Ms. Parker nor the Company consent to such conduct and objected to it.

245.    As further evidence of Ms. Downs' bad faith and breaches of fiduciary duties, she has expressed to Ms. Parker that her motive for engaging in this conduct is related to the disputes over child support in the family law proceedings, *i.e.*, there is no legitimate justification for this conduct.

246.    As a direct and proximate result of Ms. Downs' ongoing breaches of fiduciary duties owed to Ms. Parker and to Bricklight, Plaintiffs have suffered and will continue to suffer harm, with the exact amount of economic harm to be determined at trial.

### COUNT VII
### *Fraudulent Concealment Under Pennsylvania Law*

247.    Plaintiffs re-allege and incorporate herein the preceding allegations.

248.    Ms. Downs intentionally and fraudulently concealed (a) the unlawful assignment; (b) registration of an infringing word mark; (c) creation of a competing venture and diversion of Bricklight business to that venture; (d) the false statements made to the U.S. PTO, including that she had authority to assign Bricklight's trademark; and (e) the Alleged Lease amendment that was executed by Ms. Downs on behalf of both the landlord, Rainspace, and the tenant, Bricklight, without Bricklight's consent.

249.    Each of these omissions were material to Bricklight's operations and its status as a going concern.

250.    Ms. Downs omitted this crucial information knowingly or recklessly, intending to induce Bricklight and Ms. Parker to rely on the omission and carry on if such conduct did not occur.

251.     As a fiduciary of Bricklight and Ms. Parker, Ms. Downs had an obligation to disclose such information to Ms. Parker.

252.     Bricklight and Ms. Parker justifiably relied on the omissions.  It was justifiable for them to believe that Ms. Downs would not irrationally harm or defraud the business to which she owed fiduciary duties as a Director and officer.

253.     The harms to Bricklight and Ms. Parker were proximately caused by their reliance on Ms. Downs' misconduct.

### COUNT VIII
### *Minority Shareholder Oppression*
### (By Ms. Parker Only)

254.     Plaintiffs re-allege and incorporate herein the preceding allegations.

255.     Ms. Parker owns fifty percent of the Company's shares.

256.     Ms. Downs, who is the Company's sole officer and a 50% shareholder, has engaged in oppressive actions against Ms. Parker, including conduct that substantially defeats Ms. Parker's reasonable expectations as a minority shareholder in committing her capital to the enterprise.

257.     In her role as President and sole officer of the Company, Ms. Downs exercises substantial, exclusive control over certain Company activities, information and business relationships.

258.     As alleged herein, Ms. Downs has squeezed out Ms. Parker from the Company by engaging in unlawful and oppressive conduct.

259.     That unlawful conduct includes, without limitation: (a) paying excessive compensation to herself without shareholder or board approval; (b) cutting off Ms. Parker's access to Company information; (c) misappropriating Company assets and self-dealing; (d) terminating and intimidating Company employees and abdicating her own responsibilities,

leaving Ms. Parker to run the Company by herself; (e) refusing to grant Ms. Parker access to

Bricklight's records that she unquestionably has access to under 15 Pa. C.S. § 1508; and

(f) falsely and fraudulently representing to third-persons that she has authority to act on behalf of

the Company.

260.    Ms. Parker has objected to all of the foregoing misconduct, yet Ms. Downs has

not stopped oppressing her rights as a shareholder.

261.    As a direct and proximate result of Ms. Downs' oppressive actions, Ms. Parker

has suffered substantial harm, with the exact amount of economic injury to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Laura Parker and Bricklight request that this Court enter final

judgment against Defendant Chelsea Downs as follows:

a.    Enjoining Ms. Downs from engaging in any further conflict-of-interest

transactions involving Bricklight without first disclosing such contemplated

transaction in writing to Ms. Parker and then obtaining her express written

consent as the only disinterested Bricklight director, including without limitation

any efforts to transfer ownership of Bricklight's property;

b.    Declaring the assignment void, and cancelling the assignment and rectifying

Bricklight's ownership of U.S. trademark number 6,184,464 pursuant to 15

U.S.C. § 1119;

c.    Enjoining Ms. Downs or any entity under her control from any use of the word

mark "New York Toy Collective," including with respect to application no.

98196253, or the Bricklight-registered U.S. trademark number 6,184,464;

d.    Declare that Ms. Downs has no right to register the word mark "New York Toy Collective" and that the registration is invalid, and cancel the registration pursuant to 15 U.S.C. § 1119;

e.    Enjoining Ms. Downs by requiring her to withdraw her application for the word mark "New York Toy Collective," no. 98196253;

f.    Enjoining Ms. Downs from (i) any efforts to compete with Bricklight so long as she is a director or officer thereof, including by operating or owning any venture involved in the following goods: "Sex toys; Adult sexual stimulation aids, namely, dildos, anal plugs, vibrators, devices for aiding in copulation and masturbation, and penis prosthetics;" (ii) diverting any Bricklight customers or supplier to any competing venture; or (iii) using Bricklight's intellectual property for a competitor.

g.    Requiring Ms. Downs to restore Ms. Parker's access to any and all Bricklight business accounts;

h.    Requiring Ms. Downs to produce any Bricklight information or documents to Ms. Parker upon her request, and enjoining Ms. Downs from any further efforts to impede or remove Ms. Parker's access to any Bricklight account or information;

i.    Directing Ms. Downs to comply with Bricklight's Bylaws and abide by her fiduciary obligations as a director, officer, and 50% shareholder of Bricklight;

j.    Removing Ms. Downs as an Officer and Director of Bricklight pursuant to 15 Pa. C.S. §§ 1726 & 1733;

k.    Declaring that Ms. Parker is entitled to indemnification from Ms. Downs if Ms. Parker's personal guaranty of the SBA loan is triggered;

l.      Enjoining Ms. Downs from exercising any control over Bricklight's accounting, financial, or payroll systems, or its bank accounts or funds;

m.      Prohibiting Ms. Downs from contacting any person, including any current, former, or prospective customer, on behalf of Bricklight;

n.      Requiring Ms. Downs to provide an accounting;

o.      Requiring Ms. Downs to disgorge all ill-gotten gains, including profits derived or resulting from her violations of law, including her improper competition with, and trading on the name and goodwill of, Bricklight, and her numerous breaches of fiduciary duties;

p.      Awarding Plaintiffs compensatory damages;

q.      With respect to any claim for which such relief is available, awarding punitive damages under Pennsylvania law for Defendant's willful and outrageous conduct;

r.      Awarding statutory damages, including treble damages pursuant to 15 U.S.C. § 1117(b);

s.      Awarding Plaintiffs' costs, expenses, and attorney's fees in connection with this action, including pursuant to 15 U.S.C. §§ 1117(a), 1120;

t.      Awarding prejudgment interest; and

u.      Awarding any other relief as the Court deems just and proper to redress or prevent recurrence of Defendant's violations of law, as alleged herein.

### **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues so triable.

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated:  November 21, 2023

By:  */s/ Andrew M. Erdlen*
Bonnie M. Hoffman (PA Atty. I.D. No. 201140)
Andrew M. Erdlen (PA Atty. I.D. No. 320260)
Eitan G. Kagedan (PA Atty. I.D. No. 331246)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
(215) 568-0300 (facsimile)
bhoffman@hangley.com
aerdlen@hangley.com
ekagedan@hangley.com

*Attorneys for Plaintiffs*